IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

HERC RENTALS INC. and HERC
HOLDINGS INC.,

       Plaintiff,

v.

SCOTT HINMAN and PREMIER TRUCK
RENTAL, LLC,

       Defendants.

CASE NO: _____

## VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION AND OTHER RELIEF

Plaintiffs HERC RENTALS INC. and HERC HOLDINGS, INC. (collectively "Plaintiffs" or "Herc"), sue Defendants SCOTT HINMAN and PREMIER TRUCK RENTAL, LLC, and in support thereof state:

### PARTIES

1.     Plaintiff HERC RENTALS INC. is a Delaware corporation with its principal place of business located at 27500 Riverview Center Blvd., Bonita Springs, Florida 34134.

2.     Plaintiff HERC HOLDINGS, INC. is a Delaware corporation with its principal place of business located at 27500 Riverview Center Blvd., Bonita Springs, Florida 34134.

3.     Herc Rentals, Inc. is a wholly owned subsidiary of Herc Holdings, Inc. which is formerly known as Hertz Global Holdings, Inc.

4.     Upon information and belief, Defendant SCOTT HINMAN ("Hinman") is an individual domiciled and residing at 6208 Alletta Circle, Baldwinsville, New York 13027.

- 1 -

QB\64040130.5

5.      Upon information and belief, Defendant PREMIER TRUCK RENTAL, LLC ("PTR") is an Indiana limited liability company with its primary place of business located at 9138 Bluffton Road, Fort Wayne, Indiana 46809.

## COMMON ALLEGATIONS

*Background*

6.      Herc is a premier, full-service equipment rental firm with locations across the United States and Canada serving both private businesses and governmental entities.

7.      Among the equipment leased by Herc to its customers are vans, pickup trucks, trailers, commercial trucks, and off-road vehicles (also known as "utility terrain vehicles" or "UTVs") in a variety of makes and models.

8.      Upon information and belief, PTR is an equipment rental company founded in or around 2014.

9.      Upon information and belief, PTR is also engaged in the leasing of trucks, trailers, and UTVs to its customers. PRT holds itself out as doing so on its website.

*Hinman's Employment and the Agreement*

10.      In or around April 2016, Herc hired Hinman as a branch manager for its office in Syracuse, New York.

11.      As a condition of his employment, Hinman executed an Employee Confidentiality and Non-Competition Agreement (the "Agreement") dated April 26, 2016. A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

12.      In the Agreement, Hinman acknowledges that "the business of the Company is highly competitive," and that during his employment, Hinman would "have access to significant proprietary and confidential information belonging to the Company." *See* Exh. A, § 3(a).

- 2 -

QB\64040130.5

13.     Hinman therefore agreed not to:

use or disclose (other than in furtherance of the Company's business interests during the term of this Agreement and as authorized by the Company) any confidential proprietary information of the Company, including, but not limited to, customer and supplier lists, customer or prospect information, pricing information, business plans, business development plans or other strategic plans or information, sales and marketing information, patents, patent rights, techniques, know-how and trade secret information, plans or information regarding the Company's future products and services and other business and financial information of or relating to the Company or its customers.

*See id.*

14.     Hinman further acknowledged that Herc "expended considerable time, effort and expense in assembling and maintaining such information and that such information constitutes both (i) trade secret and/or confidential and proprietary information of the Company and (ii) part of the Company's goodwill." *See id.*

15.     Additionally, the Agreement contains a non-compete provision, which bars Hinman for a period of one (1) year after termination from engaging in any business that competes, directly or indirectly, with Herc within one hundred (100) miles of either the branch where he was employed, the geographic scope of his responsibilities at the time of termination, or the geographic scope of his responsibilities within one (1) year of termination. *See id.* at § 3(b).

16.     That portion of the Agreement explicitly states:

An individual or entity will be presumed to be in competition with the Company if the individual or entity markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as those marketed, sold, produced, rendered or distributed or which were in research and development by the Company at any point during the term of this Agreement.

*See id.*

- 3 -

QB\64040130.5

17.     While the Agreement identifies a number of specific competitors, it also defines "competition with the Company" and "competitor" to include "any company or entity that markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as Company, including but not limited to general and/or heavy construction equipment rental, leasing and/or sharing and related services." *See id.*

18.     Finally, the Agreement contains a non-solicitation provision that expressly prohibits Hinman from "solicit[ing] or attempt[ing] to solicit any competitive business as described above from any customer or prospective customer of the Company whom the Employee came to know, came to service, or came to learn the identity of during the course of the Employee's relationship with the Company." *See id.* at § 3(c)(i).

19.     By signing the Agreement, Hinman expressly acknowledged that these restrictive covenants are reasonable and necessary to protect Herc and its legitimate business interests in light of the position of confidence and trust his employment would entail. *See id.* at § 3(e).

20.     Hinman further acknowledged that these covenants would not prevent him from earning a living or impose and undue burden on him or his family.

21.     Hinman also acknowledged that the remedy at law for his breach of the covenants would be inadequate, and that Herc would therefore be entitled to injunctive relief (in addition to monetary damages, counsel fees, and costs of suit). *See id.*

22.     In a separate section of the Agreement, emphasized in bold, Hinman agreed "not to plead or defend on grounds of inadequate remedy at law or any element thereof in an action by the Company against the Employee for injunctive relief or for specific performance of any obligation set forth in this Agreement." *See id.* at § 4.

23.     All of the restrictive covenants in the Agreement are reasonably necessary to protect Herc's legitimate business interests.

- 4 -

24.     During the course of his employment, Hinman worked in Herc's Syracuse, NY office, where he managed a team of sales representatives and other employees covering a territory bordered by Utica to the east, Pennsylvania to the south, Rochester to the west, and Canada to the north.

25.     As branch manager, Hinman also participated in regular branch manager calls, attended annual conventions, and had full access to Herc's customer database, revenue projections, and pricing models, among other things.

26.     As in years past, Hinman also joined other Herc employees at the Company's annual convention in February 2020.

27.     Hinman participated in a breakout meeting during the convention during which Hinman received confidential information about Herc's largest client in the region, New York City Department of Transportation ("NYCDOT").

28.     NYCDOT has been one of Herc's customers for at least 25 years. A contract with the NCYDOT is up for bid this year.

29.     A short time after the convention, Hinman gave notice that he was leaving the company and his last day of employment with Herc was April 1, 2020.

*Hinman's Hiring by PTR*

30.     At the time of his resignation, Hinman told one of Herc's district managers that he was going to have two jobs after leaving the Company: consulting for a friend whose business did not involve rentals and assisting with Lysander Hockey and managing the rink operations.

31.     Herc's district manager reminded Hinman that it would be a violation of his non-compete to perform work for a consulting company advising businsses involved in equipment rentals.

- 5 -

QB\64040130.5

32.     A short time later, however, Herc discovered that Hinman had actually taken a job as a "Northeast Territory Manager" with PTR.

33.     Upon information and belief, Hinman's new job with PTR is within 100 miles of both his former Herc branch in Syracuse and the geographic territory for which he was responsible at Herc.

34.     Upon information and belief, in Hinman's role at PTR, he is engaged in the leasing of trucks and other equipment offered to the public by Herc.

*Improper Solicitation of Northline Utilities*

35.     In early May 2020, Herc was contacted by a longtime customer, Northline Utilities, LLC ("Northline") of Albany, New York, which advised that Hinman had solicited its business on PTR's behalf.

36.     Specifically, according to Northline, Hinman told the company he knew what Herc was charging for their trucks, and that he would undercut those charges in order to win the business for PTR.

37.     Northline asked Herc to match the price offered by Hinman and PTR, but Herc did not do so.

38.     Since that time, Northline has returned 13 trucks to Herc that it had been expected to lease year-round at a rate of $1,250 per month.

39.     Upon information and belief, Northline replaced those 13 trucks from Herc with trucks from PTR.

40.     Herc anticipates that Northline will return additional trucks because Hinman is aware of Herc's confidential pricing and is able to undercut the prices offered by Herc.

QB\64040130.5

*Cease-and-Desist Letters*

41.     Cease-and-desist letters enclosing copies of the Agreement were sent to both Hinman and PTR on April 30, 2020. True and accurate copies of these letters are attached hereto as **Exhibits B and C**.

42.     PTR has acknowledged receipt of the letters and the existence of the Agreement.

43.     Although PTR has attempted to dispute Herc's interpretation of the Agreement's restrictive covenants, its president, Robert Troxel, stated in a May 8, 2020 letter that the company had "advised [Hinman] not to contact any of his previous customers from HERC to rent or sell any product or service similar to HERC within 100 miles of Syracuse, New York for a period of one year."[1] A true and accurate copy of this letter is attached hereto as **Exhibit D**.

44.     Thereafter, a second letter detailing the above-referenced Northline malfeasance was sent to PTR on May 13, 2020. A true and accurate copy of this letter is attached hereto as **Exhibit E.**

*Improper Solicitation of NYCDOT*

45.     Despite the statements contained in Mr. Troxel's May 8, 2020 letter, it is now apparent that Hinman continues to violate the Agreement by unlawfully competing with Herc and soliciting its customers on behalf of PTR. Herc believes that Hinman is using Herc's confidential information to do so.

46.     As indicated above, longtime Herc customer NYCDOT is re-bidding one of its equipment rental contracts in 2020.

47.     In furtherance of that process, a pre-bid meeting was held telephonically on July 7, 2020.

---

[1] It should be noted that this promise does not accurately describe the terms of the Agreement. While the non-compete provision has a 100-mile radius, the non-solicitation clause has no such geographic limitation.

- 7 -

QB\64040130.5

48.     As usual, between 10 and 15 vendors appeared for the meeting.

49.     Like Herc, the vast majority of these vendors have longstanding relationships with NYCDOT.

50.     Upon information and belief, PTR has never before bid for an NYCDOT contract or attended a pre-bid meeting.

51.     Hinman attended the meeting on behalf of PTR and addressed a number of specific questions to the NYCDOT representatives.

52.     Upon information and belief, Hinman and PTR intend to bid on the NYCDOT contract.

53.     Upon information and belief, that bid will be informed by confidential knowledge and proprietary information and data acquired by Hinman during his employment with Herc.

54.     Like Hinman's solicitation of Northline, this bid would constitute a solicitation of NYCDOT in violation of the restrictive covenants contained in the Agreement.

## JURISDICTION AND VENUE

55.     This is an action for damages in excess of $30,000, exclusive of interest, taxable costs, and attorneys' fees, as well as for injunctive relief.

56.     Venue for this matter is appropriate in Lee County, Florida due to the venue selection clause at Section 5(a) of the Agreement and because one or more of the causes of action alleged herein accrued in Lee County, Florida.

57.     This court has personal jurisdiction over Hinman due to his consent to this Court's jurisdiction contained in Section 5(a) of the Agreement and because Hinman breached a contract in Florida.

58.     This court has general personal jurisdiction over PTR because it is engaged in substantial and not isolated activities in Florida.

- 8 -

QB\64040130.5

59.     Specifically, PTR registered as a foreign entity doing business in Florida with the Division of Corporations on or about May 14, 2018.

60.     Additionally, PTR advertises its reach into Florida on its website, https://rentptr.com/faqs/ [last accessed July 23, 2020], stating: "We rent to customers in all 50 of the United States."

61.     That information is confirmed on the LinkedIn profile of Hinman, where he explains PRT's reach into all states, including Florida: "From New York City to Chicago to Los Angeles, we serve cities in all fifty of the United States." *See* https://www.linkedin.com/in/scott-hinman-84bb2431/ [last accessed July 23, 2020].

62.     Herc has engaged the law firm of Quarles & Brady LLP to represent it in this action and is obligated to pay the firm a reasonable fee for its services.

## COUNT ONE
(Breach of Contract – Hinman)

Plaintiffs sue Defendant SCOTT HINMAN for breach of a written contract and allege:

63.     Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

64.     The Agreement constitutes a valid and legally binding contract.

65.     The restrictions on Hinman contained in the Agreement are narrowly tailored to protect Herc's legitimate business interests, including but not limited to its confidential and proprietary information, trade secrets, customer relationships, and good will.

66.     The restrictions are for a reasonable period of time, and are set to last for a period of one (1) year after the end of Hinman's employment with Herc.

QB\64040130.5

67.     Hinman breached the Agreement by accepting a position with a competitor within 100 miles of his former branch and the territory for which he was responsible during the one-year period immediately following his resignation.

68.     Hinman further breached the Agreement by soliciting Herc customers on behalf of PTR.

69.     Furthermore, upon information and belief, Hinman further breached the Agreement by misappropriating confidential and proprietary knowledge and information obtained during and as a result of his employment with Herc.

70.     Upon information and belief, Hinman has and may continue to improperly use that confidential and proprietary knowledge and information to inform his improper solicitation efforts and benefit himself and his new employer, PTR.

71.     As a result of these material breaches of the Agreement, Herc has sustained irreparable harm to its business interests, goodwill, and reputation, as well as monetary damages in the form of lost profits. The damage is ongoing.

72.     Accordingly, as provided in the Agreement, Herc is entitled to an injunction to enforce its rights under the Agreement and prevent further harm.

73.     Herc is entitled to recover its attorneys' fees from Hinman pursuant to Section 3(e) of the Agreement and Florida Statutes § 542.335(k) (2019).

WHEREFORE, Plaintiffs demand judgment against Defendant SCOTT HINMAN for compensatory damages, injunctive relief (both temporary and permanent), costs, interest, attorneys' fees, and such further relief as the Court deems appropriate.

- 10 -

QB\64040130.5

## COUNT TWO
(Misappropriation of trade secrets – Hinman)

Plaintiffs sue Defendant SCOTT HINMAN for misappropriation of trade secrets and allege:

74.     Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

75.     But for his employment with Herc, Hinman would not have had access to Herc's confidential information and trade secrets regarding its business, pricing, customers, and contracts.

76.     Herc took reasonable measures to safeguard its confidential information and trade secrets.

77.     Herc uses the trade secrets in its businesses and the trade secrets provide Herc an advantage and/or an opportunity to gain an advantage over those who do not know or use the confidential information and trade secrets.

78.     After separation from Herc, upon information and belief, Hinman has used Herc's trade secrets in violation of the Florida Uniform Trade Secrets Act, Florida Statutes § 688.01 (2019), *et seq.*(the "Trade Secrets Act").

79.     Specifically, Hinman has used and, upon belief, is continuing to use Herc's trade secrets to solicit customers in order to directly compete with Herc.

80.     Hinman willfully and maliciously misappropriated Herc's trade secrets in order to directly compete with Herc's business and is believed to be continuing to use Herc's trade secrets despite several requests to stop doing so.

81.     Herc has been damaged by Hinman's misappropriation of its trade secrets.

QB\64040130.5

82.     Herc is entitled to recover from Hinman its damages, including exemplary damages and injunctive relief, and may recover attorneys' fees from Hinman due to his willful and malicious misappropriation of Herc's trade secrets pursuant to § 668.05 of the Trade Secrets Act.

WHEREFORE, Plaintiffs demand judgment against Defendant SCOTT HINMAN for damages, including exemplary damages, injunctive relief, interest, costs, attorneys' fees, and such further relief as the Court deems appropriate.

## COUNT THREE
(Breach of the Duty of Good Faith and Fair Dealing – Hinman)

Plaintiffs sue Defendant SCOTT HINMAN for breach of the duty of good faith and fair dealing and allege:

83.     Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

84.     Implicit in the above-referenced Agreement and in the employment relationship between Hinman and Herc was a duty of good faith and fair dealing.

85.     By accepting employment with a direct competitor and soliciting customers using proprietary and confidential knowledge and information obtained through his employment with Herc, Hinman breached this duty and deprived Herc of the benefit of its bargain.

86.     As a result of Hinman's conduct, Herc has sustained both irreparable and monetary harm.

WHEREFORE, Plaintiffs demand judgment against Defendant SCOTT HINMAN for damages, interest, costs, and such further relief as the Court deems appropriate.

- 12 -

QB\64040130.5

## COUNT FOUR
### (Promissory Estoppel – Hinman)

Plaintiffs sue Defendant SCOTT HINMAN for promissory estoppel and allege:

87.     Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

88.     Hinman promised, among other things, to maintain proprietary and confidential knowledge and information, refrain from competition, and refrain from improper solicitation along the lines set forth in the Agreement.

89.     Herc relied to its detriment upon these promises and, as a result, has sustained both irreparable and monetary harm.

90.     Therefore, even if the Agreement is found invalid for any reason, Herc is nevertheless entitled to relief.

WHEREFORE, Plaintiffs demand judgment against Defendant SCOTT HINMAN for damages, interest, costs, and such further relief as the Court deems appropriate.

## COUNT FIVE
### (Unjust Enrichment – Hinman and PTR)

Plaintiffs sue Defendant SCOTT HINMAN for unjust enrichment and allege:

91.     Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

92.     As detailed above, Hinman has improperly traded on proprietary and confidential knowledge and information obtained through his employment with Herc and has successfully used that knowledge and information to solicit Herc's customers for his personal benefit and the benefit of PTR.

93.     These acts were undertaken without the knowledge or permission of Herc and in direct violation of the restrictive covenants contained in the Agreement.

- 13 -

QB\64040130.5

94.     As a result of this misconduct, both Hinman and PTR have been enriched.

95.     Under the circumstances, it would be inequitable to permit Hinman and PTR to retain the benefits of their misconduct.

WHEREFORE, Plaintiffs demand judgment against Defendant SCOTT HINMAN for damages, interest, costs, and such further relief as the Court deems appropriate.

## COUNT SIX
(Tortious Interference with Contract – PTR)

Plaintiffs sue Defendant PREMIER TRUCK RENTAL, LLC for tortious interference with contract and allege:

96.     Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

97.     The Agreement between Herc and Hinman constituted a valid, legally binding contract.

98.     Upon information and belief, PTR had knowledge of the Agreement at the time it hired Hinman.

99.     At the very least, PTR became aware of the Agreement as of April 30, 2020, when it was served with a cease-and-desist letter.

100.    Nevertheless, upon information and belief, PTR permitted and/or encouraged Hinman to violate the terms of the Agreement by, among other things, soliciting Herc's customers and using Herc's confidential information and trade secrets for the benefit of PTR.

101.    Upon information and belief, PTR's conduct in this regard was both intentional and improper.

102.    As a result of PTR's interference, Herc has sustained both irreparable and monetary harm.

- 14 -

QB\64040130.5

WHEREFORE, Plaintiffs demand judgment against Defendant PREMIER TRUCK RENTAL, LLC for damages, injunctive relief (both temporary and permanent), interest, costs, and such further relief as the Court deems appropriate.

### COUNT SEVEN
(Tortious Interference with Business Relations – Hinman and PTR)

Plaintiffs sue Defendants SCOTT HINMAN and PREMIER TRUCK RENTAL, LLC for tortious interference with business relations and allege:

103.   Herc hereby realleges and incorporates by reference paragraphs 1 through 62 as if set forth herein in full.

104.   Hinman and PTR are aware of the long standing business relationships between Herc and a number of its customers, including but not limited to NYCDOT.

105.   Nevertheless, Hinman and PTR are now intentionally and wrongfully interfering with those relationships in violation of the Agreement and the restrictive covenants contained therein and through use of Herc's confidential information and trade secrets.

106.   As a result of this misconduct, Herc has suffered and will continue to suffer both irreparable and monetary harm.

WHEREFORE, Plaintiffs demand judgment against Defendants SCOTT HINMAN and PREMIER TRUCK RENTAL, LLC for damages, injunctive relief (both temporary and permanent), interest, costs, and such further relief as the Court deems appropriate.

[*attorney signature next page*]

QB\64040130.5

Respectfully submitted on July 28, 2020.

QUARLES & BRADY LLP

By: s/ Kelly L. Davis
    Kelly L. Davis (FL Bar No. 26461)
      Email:  kelly.davis@quarles.com
             michele.preston@quarles.com
      Tel:  239-659-5066
      Fax:  239-213-5433
    Alexis M. Barkis (FL Bar No. 105721
      Email: alexis.barkis@quarles.com
      Tel: 239-659-5048
    1395 Panther Lane, Suite 300
    Naples, FL  34109

*Counsel for Plaintiffs*

QB\64040130.5

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and

that the facts stated in it are true and correct to the best of my knowledge and belief.


HERC RENTALS INC. and HERC HOLDINGS, INC.


By:   ___*verification forthcoming*_____

- 17 -

QB\64040130.5

# EXHIBIT A

## EMPLOYEE CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Employee Confidentiality and Non-Competition Agreement (the "Agreement")

made as of the April 26, 2016, by and between Hertz Global Holdings, Inc., The Hertz

Corporation, a Delaware corporation, with offices at 8501 Williams Road, Estero, Florida

(hereinafter "Hertz" or "the Company"), duly acting under authority of its officers and directors

on the one hand, and Scott D Hinman, (the "Employee"), on the other hand.

### RECITALS

The Company desires to enter into an employer-employee relationship with the Employee,

and the Employee desires to enter into an employer-employee relationship with the Company, on

the terms, and subject to the conditions, contained herein.

**NOW, THEREFORE,** in consideration of the compensation and other benefits of the

Employee's employment and continued employment with the Company, and of other good and

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and as a

condition of employment or continued employment by the Company, the parties hereto,

intending to be legally bound, hereby agree as follows:

1. RELATIONSHIP: AT WILL EMPLOYMENT

The Company hereby agrees to employ the Employee as Mgr Branch.  The Employee

specifically acknowledges that his employment with the Company is and will be "at will" and

that, consequently, either the Employee or the Company may terminate the employer-employee

relationship at any time, for any reason or for no reason at all, subject to the continuing


Initials

obligations of the Employee as set forth in Section 3 of this Agreement.

2. DUTIES

The Employee shall serve as a Mgr Branch and will, to the best of his ability perform the duties of Mgr Branch. The Employee's duties and authority shall consist of and include all duties and authority customarily performed and held by persons holding equivalent positions within the Company.

3. CONFIDENTIALITY; UNFAIR COMPETITION

(a) The Employee recognizes and acknowledges that the business of the Company is highly competitive and that during the course of his relationship with the Company he will have access to significant proprietary and confidential information belonging to the Company. The Employee therefore covenants and agrees, for the duration of this Agreement and at all times following its termination, he will not use or disclose (other than in furtherance of Company's business interests during the term of this Agreement and as authorized by the Company) any confidential proprietary information of the Company, including, but not limited to, customer and supplier lists, customer or prospect information, pricing information, business plans, business development plans or other strategic plans or information, sales and marketing information, patents, patent rights, inventions, trademark or trade name rights, copyrights and other intellectual property rights, techniques, know-how and trade secret information, plans or information regarding the Company's future products and services and other business and financial information of or relating to the Company or its customers.   The Employee shall retain all such information in trust for the sole benefit of the Company. The Employee agrees that the Company has expended considerable time, effort and expense in assembling and maintaining

Initials

such information and that such information constitutes both (i) trade secret and/or confidential and proprietary information of the Company and (ii) part of the Company's goodwill.

(b) During the term of this Agreement and Employee's employment by the Company, and for a period of one year after the termination of Employee's employment with the Company whether said termination was voluntary or involuntary, except as provided in section 3(h), the Employee shall not, without the prior written consent of the Company, directly or indirectly, whether as a principal, agent, officer, director, partner, employee, consultant, independent contractor or in any other capacity whatsoever, alone or in association with any other person, carry on, or be engaged, concerned or take part in, or render services or assistance to, or own, share in the earnings of, or invest in the stocks, bonds or other securities of any business, firm, corporation or institution that is directly or indirectly in competition with the Company within one hundred (100) miles of the Company branch, location, or office where employee works, or is employed, or within the geographic scope of responsibilities at time of termination, or worked, was employed or was within the geographic scope of responsibilities during the one-year period preceding termination.  An individual or entity will be presumed to be in competition with the Company if the individual or entity markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as those marketed, sold, produced, rendered or distributed or which were in research and development by the Company at any point during the term of this Agreement.  The foregoing restriction will not preclude the Employee from owning up to 1% of the stock of a publicly traded company or from engaging in competitive business activities which do not otherwise violate the terms and conditions of subsection (a) or subsection (c) of this Agreement.

 Initials

For purposes of this Agreement the phrase "competition with the Company" and "competitor" shall be defined as: (1) United Rentals, Sunbelt Rentals, NES Rentals, Ahern Rentals, H&E Equipment Services, Neff Rentals, Sunstate Equipment Co., BlueLine Rental, Cat Rental Stores (Caterpillar), Studio Services, Star Rentals and Home Depot Rentals; (2) any company or entity engaged in the business of renting or selling general or heavy construction equipment including but not limited to generator, pump and compressor equipment (3) any company or entity that markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as Company, including but not limited to general and/or heavy construction equipment rental, leasing and/or sharing and related services; and/or (4) any successors of the aforementioned.

(c) During the term of this Agreement, and for a period of one year following the termination of the Employee's employment with the Company whether said termination was voluntary or involuntary, the Employee shall not, as a principal, proprietor, director, officer, partner, shareholder, employee, member, manager, consultant, agent, independent contractor or otherwise, for himself or on behalf of any other person or entity other than the Company, directly or indirectly:

(i) Solicit or attempt to solicit any competitive business as described above from any customer or prospective customer of the Company whom the Employee came to know, came to service, or came to learn the identity of during course of the Employee's relationship with the Company;

(ii) Solicit or induce or attempt to solicit or induce any person who is employed by the Company to leave the Company; or

_Initials

(iii)     Aid, assist or counsel any other person, firm, corporation, entity or the like to do any of the above.

(d) All written materials, records and documents made by the Employee or coming into the Employee's possession during the term of this Agreement concerning the business or affairs of the Company, together with all intellectual and industrial property rights attached thereto shall be the sole property of the Company; and, upon termination of the Employee's employment and/or this Agreement or at the request of the Company at any time, the Employee shall promptly deliver all such materials and information in his possession or control to the Company.

(e) In view of the services which the Employee will perform for the Company, which services are special, unique and extraordinary in character and which will place the Employee in a position of confidence and trust with customers of the Company and will provide the Employee with access to confidential and proprietary financial information, trade secrets, "know-how" and other confidential and proprietary information of the Company, the Employee expressly acknowledges that the restrictive covenants set forth in this Section 3 are reasonable and necessary to protect and maintain the proprietary and other legitimate business interests of the Company and that the enforcement of such restrictive covenants will not prevent the Employee from earning a livelihood or impose any undue burden on the Employee or his family.  The Employee further acknowledges that the remedy at law for any breach or threatened breach of this Section 3 by him, if such breach or threatened breach is held by the Court to exist, will be inadequate and, accordingly, that the Company shall, in addition to all other available remedies, be entitled to injunctive relief without being required to post bond or other security and without having to prove the inadequacy of the remedies available at law.  In addition, in the event a Court

 Initials

determines that there has been a breach or threatened breach or repudiation of Section 3 of this Agreement by the Employee, the Employee agrees that, in addition to injunctive relief and monetary damages, the Company shall be entitled to recover from the Employee its reasonable attorneys' fees and costs in obtaining any restraining order, preliminary or permanent injunction or any monetary judgment against the Employee.

(f)  If any portion of the provisions of this Section 3 is held to be unenforceable for any reason, including but not limited to the duration of such provision, the territory being covered thereby or the type of conduct restricted therein, the parties agree that the Court is authorized and directed to modify the duration, geographic area and/or other terms of such provisions to the maximum benefit of the Company as permitted by law, and, as so modified, said provision shall then be enforceable.

(g) The period of time during which the provisions of this Section 3 shall apply shall be extended by the length of time during which the Employee is deemed to be in breach of any of the terms of this Section 3.

(h) Notwithstanding the foregoing, in the event Employee is involuntarily laid off from the position such that eligibility for severance per Hertz Procedure 2-30 is triggered, the competitive restrictions set forth in paragraph 3(b) of this agreement shall not apply.

4.  **WAIVER OF JURY TRIAL**.  **The Employee EXPRESSLY waives a trial by jury and agrees not to plead or defend on grounds of adequate remedy at law or any element thereof in an action by the Company against the Employee for injunctive relief or for specific performance of any obligation set forth in this Agreement.**

5.  MISCELLANEOUS.

Initials

(a) <u>Governing Law, Forum Selection and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without giving effect to conflict of laws principals thereof. The Employee and the Company hereby agree that any action initiated by or on behalf of either party seeking to interpret or enforce the terms of this Agreement shall only be brought in either the Circuit Court of the Twentieth Judicial Circuit, Lee County, Florida or the United States District Court for the Middle District of Florida. The parties consent to the exclusive jurisdiction and venue of said Courts and waive any challenge to personal jurisdiction..

(b) <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable, the remainder shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

(c) <u>Entire Agreement</u>. This Agreement represents the entire understanding of the parties with respect to the subject matter hereof and supersedes and replaces in its entirety all prior agreements and understandings oral or written between the parties hereto with respect to the subject matter hereof. No other representations, promises, agreements or understandings regarding the subject matter hereof shall be of any force or effect unless in writing, executed by the party to be bound, and dated subsequent to the date hereof.

(d) <u>Amendment</u>. This Agreement may not be cancelled, changed, modified or amended orally, and no cancellation, change, modification or amendment hereof shall be effective or binding unless in written instrument signed by the Company and the Employee. A provision of this Agreement may be waived only by written instrument signed by the party against whom or

_Initials

which enforcement of such waiver is sought.

(e) Headings. The headings contained in this Agreement are for reference purposes only, and shall not affect the meaning or interpretation of this Agreement.

(f) Notice. All notices, requests, demands or other communications to the Company and/or the Employee under or relating to this Agreement shall be in writing to the respective addresses listed on the first page of this Agreement. Notice shall be duly given if in writing and delivered by hand or mailed by first class, registered mail, return-receipt requested, with postage and registry fees pre-paid.

(g) No Prior Non-Compete or Employment Agreement. The Employee represents and warrants that he is not presently subject to any non-compete, restrictive covenant or like agreement that will preclude him from employment with the Company or in any away limit him in performing any of his obligations under this Agreement. The Employee agrees and acknowledges that if he is subject to any such non-compete, restrictive covenant or other agreement, that the Company will have no obligation to perform its duties under this Agreement or to continue his employment.

(h) Interpretation and Construction. The parties agree that this Agreement shall be construed in favor of providing all reasonable protection to the legitimate business interests of the Company. The parties further agree that, in interpreting and enforcing this Agreement, the court shall not employ any rule of contract construction that requires the court to construe narrowly against the drafter of the Agreement and shall consider the Agreement as if each party participated equally in its preparation.

(i) Survival. The Employee's obligations as set forth in Section 3 represent independent

Initials

covenants by which the Employee is and shall remain bound notwithstanding any breach or claim of breach by the Company, and shall survive the termination or expiration of this Agreement.

(j)  Changes in your Position, Duties, etc.  This Agreement will continue to be in full force and effect notwithstanding any changes to your position, your duties and responsibilities, or your place of work.

(k) The Employee acknowledges that he has read this Agreement, that he was given sufficient time and opportunity to review it and to consult an attorney regarding its terms and conditions, and that the Company has recommended to the Employee that he consult an attorney prior to execution of this Agreement. The Employee further acknowledges that, pursuant to Section 1, this Agreement does not alter the Employee's status as an employee-at-will or in any way limit the Company's right to terminate the employment relationship at any time.  The Employee further acknowledges and agrees that the restrictions on competition set forth in this Agreement are reasonable and necessary for the protection of the Company and that his agreement to and fulfillment of same are a material condition of employment with the Company.

<center>[SIGNATURE PAGE FOLLOWS]</center>

_Initials_

IN WITNESS HEREOF, the parties have executed this Agreement as of the date first written above.

THE EMPLOYEE

Name: Scott D Hinman

Dated: 5/12/2016

THE HERTZ CORPORATION

By: _____

Title: District Manager

Dated: 5-12-16

_____ Initials

# EXHIBIT B



Herc Rentals Inc.
27500 Riverview Center Blvd
Bonita Springs, FL 34134
239-301-1407
Jennifer.brandeis@hercrentals.com

April 30, 2020

**VIA FEDEX AND EMAIL (sonicse2@aol.com)**

Scott Hinman
6208 Alletta Circle
Baldwinsville, NY 13027

### Re: Cease and Desist Notice

Dear Mr. Hinman:

It has just come to our attention that you are engaged in conduct in direct violation of the terms and conditions of your Employee Confidentiality and Non-Disclosure Agreement dated April 26, 2016, (the "Agreement"), a copy of which is enclosed for your reference. This letter shall serve as your only notice that you immediately cease and desist from such activities.

Specifically, we understand that you are now working for PTR Premier Truck Rental, a direct competitor of Herc Rentals Inc. ("Herc" or the "Company"), in the Syracuse, NY area. Under the express terms of the Agreement, you are prohibited from working for a competitor within one hundred (100) miles of the Company branch, location or office where you worked (the "Restricted Area") for a one-year period following the termination of your employment from Herc.

At all times during your employment with Herc, you worked out of the Company's Syracuse branch. You resigned from Herc effective April 1, 2020. Accordingly, your employment with a competitor of the Company within the Restricted Area violates the express terms of your Agreement. Please provide us with written confirmation within five (5) days of receipt of this letter of all steps taken by you and your employer to cease and desist from such activities and to comply with your obligations under the Agreement.

I would additionally remind you of the remaining obligations under the Agreement which we expect you to abide by. In particular, the Agreement prohibits you from soliciting or attempting to solicit any competitive business from Herc customers (as more fully defined in the Agreement) and from soliciting or inducing, or attempting to solicit or induce, any Herc employee to terminate their employment. Should information come to our attention that you are engaged in any conduct in violation of these prohibitions, we will pursue all appropriate legal remedies under the terms of the Agreement and applicable law.

April 30, 2020
Scott Hinman – Cease and Desist Notice
Page 2

Finally, you are prohibited from using or disclosing to any third party (including, without limitation, your new employer) any of the Company's confidential and proprietary information and trade secrets.  Please provide us with written confirmation with five (5) days of receipt of this notice that you do not have any such information, electronically or otherwise, and/or that you have not shared with any other person or entity, any of the Company's confidential and proprietary information and trade secrets.

Please be advised that Herc reserves its right to pursue all appropriate legal and equitable remedies against you and your employer, including seeking damages, attorneys' fees and injunctive relief, arising out of the aforementioned conduct without further notice.

Sincerely,

*Jennifer Brandeis*

Jennifer Brandeis
Vice President, Assistant General Counsel

## EMPLOYEE CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Employee Confidentiality and Non-Competition Agreement (the "Agreement")

made as of the April 26, 2016, by and between Hertz Global Holdings, Inc., The Hertz

Corporation, a Delaware corporation, with offices at 8501 Williams Road, Estero, Florida

(hereinafter "Hertz" or "the Company"), duly acting under authority of its officers and directors

on the one hand, and Scott D Hinman, (the "Employee"), on the other hand.

### RECITALS

The Company desires to enter into an employer-employee relationship with the Employee,

and the Employee desires to enter into an employer-employee relationship with the Company, on

the terms, and subject to the conditions, contained herein.

**NOW, THEREFORE,** in consideration of the compensation and other benefits of the

Employee's employment and continued employment with the Company, and of other good and

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and as a

condition of employment or continued employment by the Company, the parties hereto,

intending to be legally bound, hereby agree as follows:

1. RELATIONSHIP: AT WILL EMPLOYMENT

The Company hereby agrees to employ the Employee as Mgr Branch.  The Employee

specifically acknowledges that his employment with the Company is and will be "at will" and

that, consequently, either the Employee or the Company may terminate the employer-employee

relationship at any time, for any reason or for no reason at all, subject to the continuing


Initials

obligations of the Employee as set forth in Section 3 of this Agreement.

2. DUTIES

The Employee shall serve as a Mgr Branch and will, to the best of his ability perform the duties of Mgr Branch. The Employee's duties and authority shall consist of and include all duties and authority customarily performed and held by persons holding equivalent positions within the Company.

3. CONFIDENTIALITY; UNFAIR COMPETITION

(a) The Employee recognizes and acknowledges that the business of the Company is highly competitive and that during the course of his relationship with the Company he will have access to significant proprietary and confidential information belonging to the Company. The Employee therefore covenants and agrees, for the duration of this Agreement and at all times following its termination, he will not use or disclose (other than in furtherance of Company's business interests during the term of this Agreement and as authorized by the Company) any confidential proprietary information of the Company, including, but not limited to, customer and supplier lists, customer or prospect information, pricing information, business plans, business development plans or other strategic plans or information, sales and marketing information, patents, patent rights, inventions, trademark or trade name rights, copyrights and other intellectual property rights, techniques, know-how and trade secret information, plans or information regarding the Company's future products and services and other business and financial information of or relating to the Company or its customers. The Employee shall retain all such information in trust for the sole benefit of the Company. The Employee agrees that the Company has expended considerable time, effort and expense in assembling and maintaining

Initials

such information and that such information constitutes both (i) trade secret and/or confidential and proprietary information of the Company and (ii) part of the Company's goodwill.

(b) During the term of this Agreement and Employee's employment by the Company, and for a period of one year after the termination of Employee's employment with the Company whether said termination was voluntary or involuntary, except as provided in section 3(h), the Employee shall not, without the prior written consent of the Company, directly or indirectly, whether as a principal, agent, officer, director, partner, employee, consultant, independent contractor or in any other capacity whatsoever, alone or in association with any other person, carry on, or be engaged, concerned or take part in, or render services or assistance to, or own, share in the earnings of, or invest in the stocks, bonds or other securities of any business, firm, corporation or institution that is directly or indirectly in competition with the Company within one hundred (100) miles of the Company branch, location, or office where employee works, or is employed, or within the geographic scope of responsibilities at time of termination, or worked, was employed or was within the geographic scope of responsibilities during the one-year period preceding termination.  An individual or entity will be presumed to be in competition with the Company if the individual or entity markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as those marketed, sold, produced, rendered or distributed or which were in research and development by the Company at any point during the term of this Agreement.  The foregoing restriction will not preclude the Employee from owning up to 1% of the stock of a publicly traded company or from engaging in competitive business activities which do not otherwise violate the terms and conditions of subsection (a) or subsection (c) of this Agreement.

Initials

For purposes of this Agreement the phrase "competition with the Company" and "competitor" shall be defined as: (1) United Rentals, Sunbelt Rentals, NES Rentals, Ahern Rentals, H&E Equipment Services, Neff Rentals, Sunstate Equipment Co., BlueLine Rental, Cat Rental Stores (Caterpillar), Studio Services, Star Rentals and Home Depot Rentals; (2) any company or entity engaged in the business of renting or selling general or heavy construction equipment including but not limited to generator, pump and compressor equipment (3) any company or entity that markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as Company, including but not limited to general and/or heavy construction equipment rental, leasing and/or sharing and related services; and/or (4) any successors of the aforementioned.

(c) During the term of this Agreement, and for a period of one year following the termination of the Employee's employment with the Company whether said termination was voluntary or involuntary, the Employee shall not, as a principal, proprietor, director, officer, partner, shareholder, employee, member, manager, consultant, agent, independent contractor or otherwise, for himself or on behalf of any other person or entity other than the Company, directly or indirectly:

(i)  Solicit or attempt to solicit any competitive business as described above from any customer or prospective customer of the Company whom the Employee came to know, came to service, or came to learn the identity of during course of the Employee's relationship with the Company;

(ii) Solicit or induce or attempt to solicit or induce any person who is employed by the Company to leave the Company; or

 Initials

(iii)    Aid, assist or counsel any other person, firm, corporation, entity or the like to do any of the above.

(d) All written materials, records and documents made by the Employee or coming into the Employee's possession during the term of this Agreement concerning the business or affairs of the Company, together with all intellectual and industrial property rights attached thereto shall be the sole property of the Company; and, upon termination of the Employee's employment and/or this Agreement or at the request of the Company at any time, the Employee shall promptly deliver all such materials and information in his possession or control to the Company.

(e) In view of the services which the Employee will perform for the Company, which services are special, unique and extraordinary in character and which will place the Employee in a position of confidence and trust with customers of the Company and will provide the Employee with access to confidential and proprietary financial information, trade secrets, "know-how" and other confidential and proprietary information of the Company, the Employee expressly acknowledges that the restrictive covenants set forth in this Section 3 are reasonable and necessary to protect and maintain the proprietary and other legitimate business interests of the Company and that the enforcement of such restrictive covenants will not prevent the Employee from earning a livelihood or impose any undue burden on the Employee or his family.  The Employee further acknowledges that the remedy at law for any breach or threatened breach of this Section 3 by him, if such breach or threatened breach is held by the Court to exist, will be inadequate and, accordingly, that the Company shall, in addition to all other available remedies, be entitled to injunctive relief without being required to post bond or other security and without having to prove the inadequacy of the remedies available at law.  In addition, in the event a Court

 Initials

determines that there has been a breach or threatened breach or repudiation of Section 3 of this Agreement by the Employee, the Employee agrees that, in addition to injunctive relief and monetary damages, the Company shall be entitled to recover from the Employee its reasonable attorneys' fees and costs in obtaining any restraining order, preliminary or permanent injunction or any monetary judgment against the Employee.

(f)  If any portion of the provisions of this Section 3 is held to be unenforceable for any reason, including but not limited to the duration of such provision, the territory being covered thereby or the type of conduct restricted therein, the parties agree that the Court is authorized and directed to modify the duration, geographic area and/or other terms of such provisions to the maximum benefit of the Company as permitted by law, and, as so modified, said provision shall then be enforceable.

(g) The period of time during which the provisions of this Section 3 shall apply shall be extended by the length of time during which the Employee is deemed to be in breach of any of the terms of this Section 3.

(h) Notwithstanding the foregoing, in the event Employee is involuntarily laid off from the position such that eligibility for severance per Hertz Procedure 2-30 is triggered, the competitive restrictions set forth in paragraph 3(b) of this agreement shall not apply.

4.  **WAIVER OF JURY TRIAL**.  **The Employee EXPRESSLY waives a trial by jury and agrees not to plead or defend on grounds of adequate remedy at law or any element thereof in an action by the Company against the Employee for injunctive relief or for specific performance of any obligation set forth in this Agreement.**

5.  MISCELLANEOUS.

Initials

(a) <u>Governing Law, Forum Selection and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without giving effect to conflict of laws principals thereof. The Employee and the Company hereby agree that any action initiated by or on behalf of either party seeking to interpret or enforce the terms of this Agreement shall only be brought in either the Circuit Court of the Twentieth Judicial Circuit, Lee County, Florida or the United States District Court for the Middle District of Florida. The parties consent to the exclusive jurisdiction and venue of said Courts and waive any challenge to personal jurisdiction..

(b) <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable, the remainder shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

(c) <u>Entire Agreement</u>. This Agreement represents the entire understanding of the parties with respect to the subject matter hereof and supersedes and replaces in its entirety all prior agreements and understandings oral or written between the parties hereto with respect to the subject matter hereof. No other representations, promises, agreements or understandings regarding the subject matter hereof shall be of any force or effect unless in writing, executed by the party to be bound, and dated subsequent to the date hereof.

(d) <u>Amendment</u>. This Agreement may not be cancelled, changed, modified or amended orally, and no cancellation, change, modification or amendment hereof shall be effective or binding unless in written instrument signed by the Company and the Employee. A provision of this Agreement may be waived only by written instrument signed by the party against whom or


Initials

which enforcement of such waiver is sought.

     (e) <u>Headings</u>.  The headings contained in this Agreement are for reference purposes only, and shall not affect the meaning or interpretation of this Agreement.

     (f) <u>Notice</u>.  All notices, requests, demands or other communications to the Company and/or the Employee under or relating to this Agreement shall be in writing to the respective addresses listed on the first page of this Agreement.  Notice shall be duly given if in writing and delivered by hand or mailed by first class, registered mail, return-receipt requested, with postage and registry fees pre-paid.

     (g) <u>No Prior Non-Compete or Employment Agreement</u>.  The Employee represents and warrants that he is not presently subject to any non-compete, restrictive covenant or like agreement that will preclude him from employment with the Company or in any away limit him in performing any of his obligations under this Agreement.  The Employee agrees and acknowledges that if he is subject to any such non-compete, restrictive covenant or other agreement, that the Company will have no obligation to perform its duties under this Agreement or to continue his employment.

     (h) <u>Interpretation and Construction</u>.  The parties agree that this Agreement shall be construed in favor of providing all reasonable protection to the legitimate business interests of the Company.  The parties further agree that, in interpreting and enforcing this Agreement, the court shall not employ any rule of contract construction that requires the court to construe narrowly against the drafter of the Agreement and shall consider the Agreement as if each party participated equally in its preparation.

     (i) <u>Survival</u>.  The Employee's obligations as set forth in Section 3 represent independent

Initials

covenants by which the Employee is and shall remain bound notwithstanding any breach or claim of breach by the Company, and shall survive the termination or expiration of this Agreement.

(j) Changes in your Position, Duties, etc. This Agreement will continue to be in full force and effect notwithstanding any changes to your position, your duties and responsibilities, or your place of work.

(k) The Employee acknowledges that he has read this Agreement, that he was given sufficient time and opportunity to review it and to consult an attorney regarding its terms and conditions, and that the Company has recommended to the Employee that he consult an attorney prior to execution of this Agreement. The Employee further acknowledges that, pursuant to Section 1, this Agreement does not alter the Employee's status as an employee-at-will or in any way limit the Company's right to terminate the employment relationship at any time. The Employee further acknowledges and agrees that the restrictions on competition set forth in this Agreement are reasonable and necessary for the protection of the Company and that his agreement to and fulfillment of same are a material condition of employment with the Company.

[SIGNATURE PAGE FOLLOWS]

Initials

IN WITNESS HEREOF, the parties have executed this Agreement as of the date first written above.

THE EMPLOYEE

Name: Scott D Hinman

Dated: 5/12/2016

THE HERTZ CORPORATION

By: _____

Title: District Manager

Dated: 5-12-16

_____Initials

# EXHIBIT
# C



Herc Rentals Inc.
27500 Riverview Center Blvd
Bonita Springs, FL 34134
239-301-1407
Jennifer.brandeis@hercrentals.com

April 30, 2020

**VIA FEDEX**

Rob Troxel
President, PTR Premier Truck
9138 Bluffton Rd
Ft. Wayne, IN 46809

### Re: Cease and Desist Notice/Scott Hinman

Dear Mr. Troxel:

I write on behalf of Herc Rentals Inc. ("Herc" or "Company") regarding Scott Hinman, a former Herc employee, who we understand has recently started working for Premier Truck Rental ("PTR") in the Syracuse, New York area. This letter shall serve as your only notice that we believe Mr. Hinman to be in violation of his Employee Confidentiality and Non-Disclosure Agreement with the Company dated April 26, 2016, (the "Agreement"), a copy of which is enclosed for your reference.

Under the express terms of the Agreement, Mr. Hinman is prohibited from working for a competitor within the Restricted Area (defined in the Agreement) for a one-year period following the termination of his employment from Herc. Specifically, Mr. Hinman agreed that he would not:

> Carry on, or be engaged, concerned or take part in, or render services or assistance to… any business, firm, corporation or institution that is directly or indirectly in competition with the Company within one hundred (100) miles of the Company branch, location or office where [he worked] or [was] employed or was within the geographic scope of responsibilities during the one-year period preceding termination.

Mr. Hinman's employment with Herc terminated effective April 1, 2020. At the time of his termination, Mr. Hinman was the Branch Manager at the Company's Syracuse branch. Mr. Hinman's employment with PTR falls squarely within the Restricted Area. Accordingly, we request that Mr. Hinman immediately cease and desist from all conduct in violation of his Agreement and that PTR provide written assurance within five (5) days after receipt of this notice of the specific steps being taken to address and prevent any further violation of Mr. Hinman's ongoing obligations under the terms of his Agreement.

You should further be advised that Herc reserves its right to seek all appropriate legal and equitable relief arising out of the aforementioned conduct without further notice. Should you have any questions or wish to discuss Mr. Hinman's employment in more detail, please feel free to contact me directly.

Sincerely,

Jennifer Brandeis
Vice President, Assistant General Counsel

## EMPLOYEE CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Employee Confidentiality and Non-Competition Agreement (the "Agreement")
made as of the April 26, 2016, by and between Hertz Global Holdings, Inc., The Hertz
Corporation, a Delaware corporation, with offices at 8501 Williams Road, Estero, Florida
(hereinafter "Hertz" or "the Company"), duly acting under authority of its officers and directors
on the one hand, and Scott D Hinman, (the "Employee"), on the other hand.

### RECITALS

The Company desires to enter into an employer-employee relationship with the Employee,
and the Employee desires to enter into an employer-employee relationship with the Company, on
the terms, and subject to the conditions, contained herein.

**NOW, THEREFORE,** in consideration of the compensation and other benefits of the
Employee's employment and continued employment with the Company, and of other good and
valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and as a
condition of employment or continued employment by the Company, the parties hereto,
intending to be legally bound, hereby agree as follows:

1. RELATIONSHIP:  AT WILL EMPLOYMENT

The Company hereby agrees to employ the Employee as Mgr Branch.  The Employee
specifically acknowledges that his employment with the Company is and will be "at will" and
that, consequently, either the Employee or the Company may terminate the employer-employee
relationship at any time, for any reason or for no reason at all, subject to the continuing

Initials

obligations of the Employee as set forth in Section 3 of this Agreement.

2. DUTIES

The Employee shall serve as a Mgr Branch and will, to the best of his ability perform the duties of Mgr Branch. The Employee's duties and authority shall consist of and include all duties and authority customarily performed and held by persons holding equivalent positions within the Company.

3. CONFIDENTIALITY; UNFAIR COMPETITION

(a) The Employee recognizes and acknowledges that the business of the Company is highly competitive and that during the course of his relationship with the Company he will have access to significant proprietary and confidential information belonging to the Company. The Employee therefore covenants and agrees, for the duration of this Agreement and at all times following its termination, he will not use or disclose (other than in furtherance of Company's business interests during the term of this Agreement and as authorized by the Company) any confidential proprietary information of the Company, including, but not limited to, customer and supplier lists, customer or prospect information, pricing information, business plans, business development plans or other strategic plans or information, sales and marketing information, patents, patent rights, inventions, trademark or trade name rights, copyrights and other intellectual property rights, techniques, know-how and trade secret information, plans or information regarding the Company's future products and services and other business and financial information of or relating to the Company or its customers.   The Employee shall retain all such information in trust for the sole benefit of the Company. The Employee agrees that the Company has expended considerable time, effort and expense in assembling and maintaining

 Initials

such information and that such information constitutes both (i) trade secret and/or confidential and proprietary information of the Company and (ii) part of the Company's goodwill.

(b) During the term of this Agreement and Employee's employment by the Company, and for a period of one year after the termination of Employee's employment with the Company whether said termination was voluntary or involuntary, except as provided in section 3(h), the Employee shall not, without the prior written consent of the Company, directly or indirectly, whether as a principal, agent, officer, director, partner, employee, consultant, independent contractor or in any other capacity whatsoever, alone or in association with any other person, carry on, or be engaged, concerned or take part in, or render services or assistance to, or own, share in the earnings of, or invest in the stocks, bonds or other securities of any business, firm, corporation or institution that is directly or indirectly in competition with the Company within one hundred (100) miles of the Company branch, location, or office where employee works, or is employed, or within the geographic scope of responsibilities at time of termination, or worked, was employed or was within the geographic scope of responsibilities during the one-year period preceding termination.  An individual or entity will be presumed to be in competition with the Company if the individual or entity markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as those marketed, sold, produced, rendered or distributed or which were in research and development by the Company at any point during the term of this Agreement.  The foregoing restriction will not preclude the Employee from owning up to 1% of the stock of a publicly traded company or from engaging in competitive business activities which do not otherwise violate the terms and conditions of subsection (a) or subsection (c) of this Agreement.

Initials

For purposes of this Agreement the phrase "competition with the Company" and "competitor" shall be defined as: (1) United Rentals, Sunbelt Rentals, NES Rentals, Ahern Rentals, H&E Equipment Services, Neff Rentals, Sunstate Equipment Co., BlueLine Rental, Cat Rental Stores (Caterpillar), Studio Services, Star Rentals and Home Depot Rentals; (2) any company or entity engaged in the business of renting or selling general or heavy construction equipment including but not limited to generator, pump and compressor equipment (3) any company or entity that markets, sells, produces, renders or distributes the same or similar types or kinds of products and/or services as Company, including but not limited to general and/or heavy construction equipment rental, leasing and/or sharing and related services; and/or (4) any successors of the aforementioned.

(c) During the term of this Agreement, and for a period of one year following the termination of the Employee's employment with the Company whether said termination was voluntary or involuntary, the Employee shall not, as a principal, proprietor, director, officer, partner, shareholder, employee, member, manager, consultant, agent, independent contractor or otherwise, for himself or on behalf of any other person or entity other than the Company, directly or indirectly:

(i)  Solicit or attempt to solicit any competitive business as described above from any customer or prospective customer of the Company whom the Employee came to know, came to service, or came to learn the identity of during course of the Employee's relationship with the Company;

(ii) Solicit or induce or attempt to solicit or induce any person who is employed by the Company to leave the Company; or

Initials

(iii)    Aid, assist or counsel any other person, firm, corporation, entity or the like to do any of the above.

(d) All written materials, records and documents made by the Employee or coming into the Employee's possession during the term of this Agreement concerning the business or affairs of the Company, together with all intellectual and industrial property rights attached thereto shall be the sole property of the Company; and, upon termination of the Employee's employment and/or this Agreement or at the request of the Company at any time, the Employee shall promptly deliver all such materials and information in his possession or control to the Company.

(e) In view of the services which the Employee will perform for the Company, which services are special, unique and extraordinary in character and which will place the Employee in a position of confidence and trust with customers of the Company and will provide the Employee with access to confidential and proprietary financial information, trade secrets, "know-how" and other confidential and proprietary information of the Company, the Employee expressly acknowledges that the restrictive covenants set forth in this Section 3 are reasonable and necessary to protect and maintain the proprietary and other legitimate business interests of the Company and that the enforcement of such restrictive covenants will not prevent the Employee from earning a livelihood or impose any undue burden on the Employee or his family.  The Employee further acknowledges that the remedy at law for any breach or threatened breach of this Section 3 by him, if such breach or threatened breach is held by the Court to exist, will be inadequate and, accordingly, that the Company shall, in addition to all other available remedies, be entitled to injunctive relief without being required to post bond or other security and without having to prove the inadequacy of the remedies available at law.  In addition, in the event a Court

 Initials

determines that there has been a breach or threatened breach or repudiation of Section 3 of this Agreement by the Employee, the Employee agrees that, in addition to injunctive relief and monetary damages, the Company shall be entitled to recover from the Employee its reasonable attorneys' fees and costs in obtaining any restraining order, preliminary or permanent injunction or any monetary judgment against the Employee.

(f) If any portion of the provisions of this Section 3 is held to be unenforceable for any reason, including but not limited to the duration of such provision, the territory being covered thereby or the type of conduct restricted therein, the parties agree that the Court is authorized and directed to modify the duration, geographic area and/or other terms of such provisions to the maximum benefit of the Company as permitted by law, and, as so modified, said provision shall then be enforceable.

(g) The period of time during which the provisions of this Section 3 shall apply shall be extended by the length of time during which the Employee is deemed to be in breach of any of the terms of this Section 3.

(h) Notwithstanding the foregoing, in the event Employee is involuntarily laid off from the position such that eligibility for severance per Hertz Procedure 2-30 is triggered, the competitive restrictions set forth in paragraph 3(b) of this agreement shall not apply.

4. **WAIVER OF JURY TRIAL. The Employee EXPRESSLY waives a trial by jury and agrees not to plead or defend on grounds of adequate remedy at law or any element thereof in an action by the Company against the Employee for injunctive relief or for specific performance of any obligation set forth in this Agreement.**

5. MISCELLANEOUS.

Initials

(a) <u>Governing Law, Forum Selection and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without giving effect to conflict of laws principals thereof. The Employee and the Company hereby agree that any action initiated by or on behalf of either party seeking to interpret or enforce the terms of this Agreement shall only be brought in either the Circuit Court of the Twentieth Judicial Circuit, Lee County, Florida or the United States District Court for the Middle District of Florida. The parties consent to the exclusive jurisdiction and venue of said Courts and waive any challenge to personal jurisdiction..

(b) <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable, the remainder shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

(c) <u>Entire Agreement</u>. This Agreement represents the entire understanding of the parties with respect to the subject matter hereof and supersedes and replaces in its entirety all prior agreements and understandings oral or written between the parties hereto with respect to the subject matter hereof. No other representations, promises, agreements or understandings regarding the subject matter hereof shall be of any force or effect unless in writing, executed by the party to be bound, and dated subsequent to the date hereof.

(d) <u>Amendment</u>. This Agreement may not be cancelled, changed, modified or amended orally, and no cancellation, change, modification or amendment hereof shall be effective or binding unless in written instrument signed by the Company and the Employee. A provision of this Agreement may be waived only by written instrument signed by the party against whom or

Initials

which enforcement of such waiver is sought.

(e) <u>Headings</u>.  The headings contained in this Agreement are for reference purposes only, and shall not affect the meaning or interpretation of this Agreement.

(f) <u>Notice</u>.  All notices, requests, demands or other communications to the Company and/or the Employee under or relating to this Agreement shall be in writing to the respective addresses listed on the first page of this Agreement.  Notice shall be duly given if in writing and delivered by hand or mailed by first class, registered mail, return-receipt requested, with postage and registry fees pre-paid.

(g) <u>No Prior Non-Compete or Employment Agreement</u>.  The Employee represents and warrants that he is not presently subject to any non-compete, restrictive covenant or like agreement that will preclude him from employment with the Company or in any away limit him in performing any of his obligations under this Agreement.  The Employee agrees and acknowledges that if he is subject to any such non-compete, restrictive covenant or other agreement, that the Company will have no obligation to perform its duties under this Agreement or to continue his employment.

(h) <u>Interpretation and Construction</u>.  The parties agree that this Agreement shall be construed in favor of providing all reasonable protection to the legitimate business interests of the Company.  The parties further agree that, in interpreting and enforcing this Agreement, the court shall not employ any rule of contract construction that requires the court to construe narrowly against the drafter of the Agreement and shall consider the Agreement as if each party participated equally in its preparation.

(i) <u>Survival</u>.  The Employee's obligations as set forth in Section 3 represent independent

Initials

covenants by which the Employee is and shall remain bound notwithstanding any breach or claim of breach by the Company, and shall survive the termination or expiration of this Agreement.

(j) <u>Changes in your Position, Duties, etc.</u> This Agreement will continue to be in full force and effect notwithstanding any changes to your position, your duties and responsibilities, or your place of work.

(k) The Employee acknowledges that he has read this Agreement, that he was given sufficient time and opportunity to review it and to consult an attorney regarding its terms and conditions, and that the Company has recommended to the Employee that he consult an attorney prior to execution of this Agreement. The Employee further acknowledges that, pursuant to Section 1, this Agreement does not alter the Employee's status as an employee-at-will or in any way limit the Company's right to terminate the employment relationship at any time. The Employee further acknowledges and agrees that the restrictions on competition set forth in this Agreement are reasonable and necessary for the protection of the Company and that his agreement to and fulfillment of same are a material condition of employment with the Company.

[SIGNATURE PAGE FOLLOWS]

Initials

IN WITNESS HEREOF, the parties have executed this Agreement as of the date first written above.

THE EMPLOYEE

Name: Scott D Hinman

Dated: 5/12/2016

THE HERTZ CORPORATION

By: _____

Title: District Manager

Dated: 5-12-16

Initials

# EXHIBIT D

May 8, 2020

**VIA EMAIL:**   jennifer.brandeis@hercrentals.com

HERC Rentals, Inc.
27500 Riverview Center Blvd.
Bonita Springs, FL 34134

Attn:   Jennifer Brandeis
      Vice President, Assistant General Counsel

      **Re:**   ***Scott Hinman***

Dear Ms. Brandeis:

Please let this letter serve as Premier Truck Rentals ("PTR") response to your letter of April 30, 2020. Under the Employee Confidentiality and Non-Competition Agreement you provided, it does not appear that PTR is in fact a competitor of HERC Rentals. The document lists specific competitors. That list does not contain PTR. The Agreement also defines a competitor as "any company or entity engaged in the business of renting or selling general or heavy construction equipment including but not limited to generator, pump and compressor equipment". PTR is not in the business of renting or selling heavy construction equipment, generator, pump and/or compressor equipment. The Agreement further attempts a generic description of a competitor but, again, uses the same reference to general and/or heavy construction equipment.

We have reviewed the Employee Confidentiality and Non-Competition Agreement between you and Mr. Hinman.  We respect the intent of the agreement and we have confirmed with Mr. Hinman that he has not brought any confidential information to PTR from his position at HERC, such as customer contacts, pricing information and/or any other confidential information defined in the agreement.

Mr. Hinman is the Northeast Territory Manager for PTR and as such has a multi-state region to support.  However, we have advised him not to contact any of his previous customers from HERC to rent or sell any product or service similar to HERC within 100 miles of Syracuse, New York for a period of one year. We have done this despite our belief that the agreement would not require us to do so in an effort to maintain a professional environment between your organization and PTR.

Sincerely,

Rob Troxel

2605862.2: 51687-1

# EXHIBIT E

**Herc**Rentals™

Herc Rentals Inc.
27500 Riverview Center Blvd
Bonita Springs, FL 34134
239-301-1407
Jennifer.brandeis@hercrentals.com

May 13, 2020

VIA EMAIL (rob@rentptr.com)

Rob Troxel
President, PTR Premier Truck
9138 Bluffton Rd
Ft. Wayne, IN   46809

Re: Further Cease and Desist Notice/Hinman and Stokes

Dear Mr. Troxel:

Thank you for your response to our cease and desist notices regarding Mr. Stokes' and Mr. Hinman's violations of their respective Non-competition agreements. As an initial matter, we disagree with your contention that PTR is somehow not a competitor of Herc Rentals. Both Agreements explicitly provide that an individual or entity "will be presumed to be in competition with [Herc] if the individual or entity markets, sells, produces renders or distributes the same or similar types or kinds of products and/or services as those marketed, sold, produced, rendered or distributed... at any point during the term of this Agreement." In further defining "competitor", the Agreements make clear that "competitor" and "competitive business" includes, but is not limited to, those entities that rent or sell heavy construction equipment, generators, and pumps. It is undisputed that Herc and PTR are both in the business of truck rentals and that Herc was in that business during Mr. Stokes' and Mr. Hinman's employment with Herc. Mr. Hinman certainly appears to have believed PTR was a competitor as there is no other logical reason for him having misrepresented where he was going when he resigned from Herc.

That PTR is a competitor of Herc is further underscored by the fact that Mr. Hinman is currently and actively soliciting competitive business from current Herc customers. Specifically, Mr. Hinman has personally contacted longtime Herc customer, Northline Utilities. During Mr. Hinman's tenure with Herc, Northline rented trucks from Herc, and Mr. Hinman had direct knowledge of this business and directly handled rental and service issues for Northline on Herc's behalf. Mr. Hinman's solicitation of Northline thus constitutes a blatant violation of the terms of the Agreement prohibiting him, for a one-year period, from soliciting or attempting to solicit business from any Herc customer whom he came to know, came to service, or came to learn the identity of during the course of his employment with Herc. This prohibition is not restricted to a 100-mile radius; it applies to any customer as defined by the Agreement. Accordingly, your agreement to advise Mr. Hinman to not contact any previous Herc customers within 100 miles of Syracuse is not adequate under the clear terms of the Agreement, and his solicitation of Northline is a clear breach of the Agreement.

May 13, 2020
Rob Troxel/Hinman and Stokes
Page 2

What is more concerning, however, is that Mr. Hinman is soliciting Herc customers by illegally utilizing Herc's customer contacts and pricing information—both of which you rightfully acknowledge constitutes our confidential and proprietary information. Despite his apparent statements to you that he does not have this information, we are aware that he is using our pricing information because he explicitly advised Northline that he had Herc pricing and was prepared to undercut our prices by a specific dollar amount in order to take business from Herc. Mr. Hinman's conduct directly violates the terms of the Agreement prohibiting Mr. Hinman from using or disclosing Herc's confidential and proprietary information and trade secrets.

Accordingly, we reiterate our prior demand that Mr. Stokes and Mr. Hinman immediately cease and desist from conduct in violation of the terms of their respective Non-Competition Agreements. With respect to Mr. Stokes, notwithstanding his apparent national role with your Company, he is precluded under the Agreement from working within a 100-mile radius of the Fort Wayne Branch and we would reiterate our request that you address how you might carve out this region from his current responsibility. Additionally, while we appreciate your assurance that he will not contact any of "his previous customers" from Herc, we do not believe that is sufficient to meet his contractual obligations. Under the Agreement, he is precluded from soliciting or attempting to solicit business from any customer who he came to know, came to service or came to learn the identity of during his employment with Herc. Please confirm that he will abide by these obligations. Please also confirm that Mr. Stokes has been advised that he must immediately cease and desist from soliciting Herc employees to leave Herc.

With regard to Mr. Hinman, we would ask you to address how you may similarly carve out that region from his current duties with PTR. Additionally, we need your written assurance that he will immediately cease and desist from soliciting any and all Herc customers for the remainder of the one-year period following his separation from Herc—and not just those outside of the 100-mile restricted area. Please also direct Mr. Hinman to return to Herc all pricing information and other confidential and proprietary information that he has illegally retained and to cease and desist use of any such information going forward.

Sincerely,

*Jennifer Brandeis*

Jennifer Brandeis
Vice President, Assistant General Counsel